UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------X
:
VICTOR PERALTA,                                          :
:
Plaintiff,           :
:
v.                             :
:
ST. LUKES ROOSEVELT HOSPITAL,                           :
:
Defendant.   :
:
------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: June 26, 2015

14 Civ. 2609 (KPF)

OPINION AND ORDER

KATHERINE POLK FAILLA, District Judge:

Plaintiff Victor Peralta ("Plaintiff" or "Peralta"), proceeding *pro se* and *in forma pauperis*, filed this action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17, alleging discrimination by his former employer, St. Luke's Roosevelt Hospital ("Defendant" or "St. Luke's"), on the basis of his national origin. Defendant has filed a motion to dismiss the action on the grounds that Plaintiff's claims are precluded by collateral estoppel and res judicata. For the following reasons, the motion is granted.

## BACKGROUND[1]

Plaintiff, who is of Dominican origin, was hired by St. Luke's Real Estate Services Department in November 2003 as a porter at 501 West 113th Street.

---

[1]      As is necessary on a motion to dismiss, the facts set forth in the Complaint (the "Compl.") are accepted as true. In considering a motion to dismiss, a court may also consider documents that are integral to the complaint. *See Roth* v. *Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) ("Documents that are attached to the complaint or incorporated in it by reference are deemed part of the pleading and may be considered."). Here, such documents include exhibits attached to the Complaint, documents incorporated by reference in the Complaint, and Plaintiff's prior public filings, which are exhibits to the Declaration of Katherine D. Watson (the "Watson Decl."). *See Maysonet* v. *Citi Grp., Inc.*, No. 10 Civ. 4616 (SAS), 2011 WL 476610, at *1 n.4 (S.D.N.Y. Feb. 9, 2011) ("When a

(Watson Decl. Ex. 3 at 2).  In the fall of 2010, Plaintiff was promoted to the position of handyman in another building, 1090 Amsterdam Avenue, to replace the retiring handyman, Frank Rosado, a man of Puerto Rican descent.  (*Id.*).  Noel Chin, the Building Superintendent for both buildings, was Plaintiff's direct supervisor.  (*Id.*; Compl. 5).  Mr. Chin had approached Loida Ramos, Vice President of Real Estate Services and construction, about offering the job to Plaintiff, and she had approved the promotion.  (Watson Decl. Ex. 3 at 1-2).

In late September 2012, Jim Taipovic, St. Luke's Property Manager, received a verbal complaint of sexual harassment against Plaintiff from an office manager ("Victim-1") at West Side Radiology, a tenant in the 1090 Building.  (Compl. 3, 8, 11).  On September 28, 2012, Victim-1 submitted a formal, written complaint by letter addressed to Mr. Chin.  (*Id.* at 11-12).  St. Luke's also received a written complaint from another individual who alleged that she had been sexually harassed by Plaintiff ("Victim-2") and a statement from a third individual who corroborated Victim-1's allegations.  (*Id.* at 3, 13-14).  Given the nature and seriousness of the allegations, Plaintiff was suspended pending investigation on October 1, 2012.  (*Id.* at 8).

---

motion to dismiss is premised on the doctrine of collateral estoppel, a court is permitted to take judicial notice of and consider the complaints and the record generated in both actions without having to convert the motion to dismiss into a summary judgment motion." (quotation marks and alteration omitted)).  Citations to the Complaint and to the exhibits to the Watson Declaration are made using the pagination imposed by the Court's electronic case filing ("ECF") system.  For convenience, Defendant's brief is referred to as "Def. Br.," Plaintiff's opposition is referred to as "Pl. Opp.," and Defendant's Reply is referred to as "Def. Reply."

The investigation of the complaints included interviews of five women who worked in the 1090 Building. (Compl. at 8-10). These women stated that they either were sexually harassed by Plaintiff or witnessed him sexually harass others. (*Id.*). The investigation report, dated November 15, 2012, concluded that the "conduct alleged probably did occur," given that "all individuals interviewed appeared credible and many of the incidents were witnessed by others." (*Id.* at 10). On January 17, 2013, St. Luke's held a grievance hearing with Plaintiff's union. (Watson Ex. 3 at 4). Following the investigation and hearing, Plaintiff's employment was terminated on February 5, 2013. (*Id.*; Compl. 2).

Plaintiff does not contest this sequence of events, or the fact that the allegations of sexual harassment were made. (*See generally* Compl.). Instead, he claims that the allegations of sexual harassment are false and were made as part of a conspiracy orchestrated by Ms. Ramos, who is of Puerto Rican extraction, to replace him with a Puerto Rican employee. (*Id.* at 5-6).

On June 26, 2013, Plaintiff commenced a proceeding before the New York State Division of Human Rights (the "SDHR"). In his SDHR complaint, which was dual-filed with the U.S. Equal Employment Opportunity Commission (the "EEOC") (Watson Decl. Ex. 2), Plaintiff alleged that he was fired because of his national origin in violation of New York State Human Rights Law, N.Y. Exec. Law §§ 290 to 301, and Title VII (Watson Decl. Ex. 1 at 2). Specifically, he alleged that Ms. Ramos was the "mastermind of a plot designed to take over [his] job" in an effort "to help her Puerto Rican friends

acquire key positions." (*Id.* at 3).  He further asserted that everyone involved in the "plot" was Puerto Rican, including those who complained of the harassment.  (*Id.* at 3-4).  He demanded that the names of the individuals making the complaints be released to him.  (*Id.* at 4).[2]  On August 9, 2013, Defendant submitted a position statement, which detailed Plaintiff's work history with St. Luke's, the allegations of sexual harassment, the investigation and its findings, the hearing, and Plaintiff's ultimate termination.  (Watson Decl. Ex. 3).  By letter dated August 30, 2013, the SDHR invited Plaintiff to make a rebuttal and submit additional information or evidence supporting his claim.  (Watson Decl. Ex. 4).

On September 14, 2013, Plaintiff submitted a letter rebuttal.  In that letter, he protested that he could not "appropriately counter [St. Luke's] allegations" because it maintained the anonymity of the individuals who had complained of his sexual harassment; he requested that Defendant be required to disclose their names "so that proper inquiry can be made into their credibility, bias, motive or any other relevant fact that may bear on their truth and veracity."  (Watson Decl. Ex. 5 at 2).  He claimed that "Ms. Ramos sought [his] termination so that another Puerto Rican friend of hers, Bobby, could have it," and that she "wanted to have another Puerto Rican person in that position."  (*Id.*).  He provided counter-arguments to several of the substantive

---

[2]    Because of concerns of retaliation — grounded in part on comments Plaintiff allegedly made to several of the women who complained about his conduct — Defendant has endeavored to shield the complainants' identities from Plaintiff.  (*See* Watson Decl. Ex. 3 at 5).

points made in Defendant's statement, and requested that Defendant produce witnesses to the incidents and video-surveillance footage. (*See generally id.* at 2-3).

The SDHR conducted an investigation[3] and on December 17, 2013, issued a finding of "NO PROBABLE CAUSE to believe that [St. Luke's] ha[d] engaged in or [wa]s engaging in the unlawful discriminatory practice complained of." (Watson Decl. Ex. 6 at 2). The SDHR concluded that "Complainant failed to proffer evidence refuting the reason articulated by the Respondent for his termination" and "failed to provide evidence connecting his national origin to any action taken against him by" St. Luke's. (*Id.* at 3). There simply was no demonstrated "nexus between Complainant's national origin and Respondent's decision to terminate [his] employment," and "Respondent's stated reason for terminating [him] does not appear to be pretext for discrimination." (*Id.*). The EEOC adopted the SDHR's findings by notice dated January 22, 2014. (Watson Decl. Ex. 7).

On or about February 13, 2014, Plaintiff commenced an Article 78 proceeding in New York Supreme Court, County of New York, seeking to reverse the SDHR's decision. (*See generally* Watson Decl. Ex. 8 at 10-16). In his petition, Plaintiff made the same substantive and procedural arguments that he had made to the SDHR. He asserted that the accusations of sexual harassment were false and made as part of a plot orchestrated by Ms. Ramos

---

[3]     It is unclear from the record before the Court what this investigation entailed. Because it appears it may have merely been a review of the parties' submissions, the Court will construe it as such, given that this construction is more favorable to Plaintiff.

because of his national origin.  (*Id.* at 14).  Again protesting the anonymity of the alleged victims, he argued that St. Luke's refusal to disclose their identities was proof of the deceptive plot and had misled the SDHR.  (*Id.* at 15).  He complained again that St. Luke's had not produced surveillance footage, and that no one had questioned his co-workers about the incidents.  (*Id.*).

The New York Supreme Court reviewed the evidence before it, which included everything that was before the SDHR.  (Watson Decl. Ex. 8 at 15).  On April 9, 2014, the court dismissed Plaintiff's petition, finding: (i) both Plaintiff and St. Luke's had been "given a full and fair opportunity to present their case"; (ii) the SDHR had a "rational basis for coming to its conclusion that [Plaintiff] was terminated from his employment with St. Luke's due to numerous allegations of sexual harassment …, which it found had been substantiated"; and (iii) Plaintiff had "not provided any evidence of a one-sided investigation and ha[d] not put forth any evidence that he was terminated from his position on the basis of his national origin other than his own self-serving statements."  (Watson Decl. Ex. 9 at 5-6).

On April 10, 2014, Plaintiff filed the Complaint in this action against Defendant, alleging that he had been wrongfully terminated because of his national origin (Dominican) in violation of Title VII.  (*See* Compl. 1-4).  In support of his allegations, Plaintiff relies on the same facts and allegations that were asserted in his SDHR and Article 78 proceedings.  He attached a narrative that is very similar to the narrative he attached to his Article 78 petition to the Supreme Court (*compare* Compl. 5-6 *with* Watson Ex. 8 at 14-16), and

documents that were before both the SDHR and the Supreme Court (*compare* Compl. 7-15, *with* Watson Decl. Ex. 8 at 20-31, *and* Watson Decl. Ex. 3 at 12-19). On October 20, 2014, Defendant filed the instant motion to dismiss based on claim preclusion and res judicata; it was fully briefed as of January 5, 2015. (Dkt. #21-24, 28, 29).

## DISCUSSION

### A.    Motions to Dismiss

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief." *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007)). "While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [a plaintiff's] claims across the line from conceivable to plausible.'" *In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) (quoting *Twombly*, 550 U.S. at 570). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557). Moreover, "the tenet that a court must accept a complaint's

7

allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 663.

Issues of res judicata and collateral estoppel may be decided on a motion to dismiss. *See, e.g.*, *Cameron* v. *Church*, 253 F. Supp. 2d 611, 617-24 (S.D.N.Y. 2003); *see also Pani* v. *Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998) (noting that "a district court may rely on matters of public record in deciding a motion to dismiss under Rule 12(b)(6), including case law and statutes" (citations omitted)).

## B.   Issue Preclusion and Claim Preclusion

Plaintiff's Complaint makes an employment discrimination claim under Title VII.  Defendant has moved to dismiss the Complaint on the ground that Plaintiff is precluded from litigating the same allegations he raised in his SDHR and Article 78 proceedings by the doctrines of collateral estoppel and res judicata, also called issue preclusion and claim preclusion.

The law of the jurisdiction in which the earlier actions took place governs the principles of issue and claim preclusion.  Plaintiff's Article 78 proceeding was filed in New York state court.  Thus, New York's preclusion law determines whether Plaintiff's state action bars litigation of the present action.  *Giannone* v. *York Tape & Label, Inc.*, 548 F.3d 191, 192-93 (2d Cir. 2008).  Both issue and claim preclusion are implicated by the present motion.

Under New York law, issue preclusion applies to preclude subsequent litigation when "[i] the identical issue necessarily must have been decided in the prior action and be decisive of the present action, and [ii] the party to be

8

precluded from relitigating the issue must have had a full and fair opportunity to contest the prior determination." *Constantine* v. *Teachers Coll.*, 448 F. App'x 92, 93 (2d Cir. 2011) (summary order) (citing *Jenkins* v. *City of New York*, 478 F.3d 76, 85 (2d Cir. 2007)); *see also LaFleur* v. *Whitman*, 300 F.3d 256, 271 (2d Cir. 2002) ("Under New York law, collateral estoppel precludes a party from relitigating in a subsequent action or proceeding an issue clearly raised in a prior action or proceeding and decided against that party whether or not the tribunals or causes of action are the same." (quotation marks and alterations omitted)).

"The party seeking the benefit of collateral estoppel has the burden of demonstrating the identity of the issues, whereas the party attempting to defeat its application has the burden of establishing the absence of a full and fair opportunity to litigate the issues." *Constantine*, 448 F. App'x at 93-94 (alterations omitted) (citing *Evans* v. *Ottimo*, 469 F.3d 278, 281-82 (2d Cir. 2006)).  Litigation of individual issues necessarily decided in an Article 78 proceeding may be precluded by collateral estoppel in subsequent actions. *LaFleur*, 300 F.3d at 272; *see also Kremer* v. *Chem. Constr. Corp.*, 456 U.S. 461, 481-82 (1982) (holding that an SDHR determination finding no probable cause and dismissing a complaint, coupled with a state court judgment affirming the administrative determination, precluded further litigation of federal claims arising from the same facts resolved by the prior proceedings); *Ruiz* v. *N.Y. Div. of Parole*, 894 N.Y.S.2d 582, 583 (3d Dep't 2010); *Yan Yam Koo* v. *Dep't of Buildings of N.Y.C.*, 218 F. App'x 97, 99 (2d Cir. 2007) (summary

9

order) (explaining that "preclusive effect attached once the state court [in an Article 78 proceeding] reviewed and affirmed the SDHR's finding of no probable cause").

Claim preclusion, which is often called res judicata, bars relitigation in a later lawsuit of claims that a plaintiff did bring or could have brought in his earlier lawsuit.  Under New York law,

> the doctrine of res judicata, or claim preclusion, provides that a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. … If a valid and final judgment has been entered on the merits of a case, the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

*Duane Reade, Inc.* v. *St. Paul Fire & Marine Ins. Co.*, 600 F.3d 190, 195-96 (2d Cir. 2010) (citations, quotation marks, and alterations omitted).

## C.   Analysis

In the instant action, Plaintiff brings the same claims, raises the same issues, and relies on the same facts as he did in his Article 78 proceeding and in his administrative complaints prior to that.  Then, as now, Plaintiff alleged that Defendant violated the law by discriminating against him and ultimately firing him because he was Dominican.  Then, as now, he argued that Ms. Ramos orchestrated an elaborate plot against him in order to have him fired and replaced with a Puerto Rican friend.  Then, as now, he decried the "unfounded anonymous accusations" of sexual harassment against him (*compare* Watson Decl. Ex. 8 at 14, *with* Compl. 5), and complained that he

10

and the SDHR did not have the benefit of the identities of the alleged victims, video surveillance footage, or interviews with his co-workers.  These are the same allegations and the same arguments that the New York Supreme Court considered and rejected in Plaintiff's Article 78 proceeding.  In the Article 78 proceeding, the state court judge explained that Plaintiff's discrimination claim failed because he did not state any facts or provide any evidence that tied his termination to his national origin (aside from his own conclusory, self-interested statements), and that there was nothing to suggest Defendant's proffered reason for terminating Plaintiff was pretextual.  As Defendant points out (*see* Def. Br. 11), the state court considered both the merits of Plaintiff's discrimination claims and the SDHR's investigation and decision on those claims.  Accordingly, the state court necessarily decided the issues that are raised here.

Further, to the extent that Plaintiff might attempt to bring any new claims in this action, he cannot because this action arises out of precisely the same set of facts and transactions, *viz.*, the circumstances surrounding the termination of Plaintiff's employment.  Plaintiff could have raised any claims against Defendant based on these facts in his state proceedings; they are therefore barred in this action.  *See Pajooh* v. *Dep't of Sanitation City of N.Y.*, 547 F. App'x 73, 74 (2d Cir. 2013) (summary order) (holding, in affirming dismissal of Title VII action, that "[t]he dismissal of [plaintiff's] state action was a final judgment on the merits of a factually identical claim, and therefore

11

[plaintiff] is barred from re-raising those claims here" (citing *Kremer*, 456 U.S. at 479-85)).

Plaintiff argues that issue and claim preclusion do not bar the claims in this action because he was not given a "full and fair opportunity" to litigate his claims in his SDHR and Article 78 proceedings.  (Pl. Opp. 4-7).  Plaintiff complains that he did not have the opportunity to present the testimony of witnesses, issue subpoenas, and obtain surveillance videos from the building where he worked.  (*Id.* at 6).  Essentially, he complains that he did not have the benefit of plenary discovery.  (*Id.* at 7).  But Plaintiff was never prevented from submitting evidence or witness statements to the SDHR, and was encouraged to do so in a rebuttal statement.  (*See* Watson Decl. Exs. 4, 5).  While Plaintiff made vague references to "other witnesses like his co-worker," who would support his version of events (*see* Watson Decl. Ex. 8 at 11), he never named any such individuals in his SDHR complaint, his Article 78 petition, or his rebuttal submission.  Plaintiff never submitted statements from anyone other than himself.  Plaintiff's choice to not avail himself of the process available to him did not deprive him of a full and fair opportunity to present his claims.  *Cf. Kremer*, 456 U.S. at 485 (explaining that "[t]he fact that [plaintiff] failed to avail himself of the full procedures provided by state law does not constitute a sign of their inadequacy").  Nor did the SDHR's decision not to interview certain unnamed witnesses amount to such a deprivation.  *See, e.g., Pajooh* v. *Dep't of Sanitation City of N.Y.*, No. 11 Civ. 3116 (LTS), 2012 WL 4465370, at *4 (S.D.N.Y. Sept. 27, 2012) (finding that "key" witness's unavailability to be

interviewed by SDHR did not deny plaintiff full and fair opportunity to litigate and did "not alter the preclusive effect of the prior determination"), *aff'd*, 547 F. App'x 73 (2d Cir. 2013); *Barnes* v. *Beth Israel Med. Ctr.*, 977 N.Y.S.2d 888, 888 (1st Dep't 2014) ("Petitioner was not prevented from showing pretext by [S]DHR's failure to make additional attempts to contact witnesses.  The information supplied by the parties was sufficient for [S]DHR to make its determination.").

Further, "[t]he facts that [Plaintiff] has been proceeding pro se and has not yet had the benefit of discovery do not indicate that [he] did not have an adequate opportunity to litigate [his] claims in state court." *Xu* v. *City of New York*, No. 08 Civ. 11339 (DLC), 2010 WL 3060815, at *5 (S.D.N.Y. Aug. 3, 2010), *modified on reconsideration in part on other grounds*, 2010 WL 4878949 (S.D.N.Y. Dec. 1, 2010).  State administrative proceedings are not required to permit complainants full discovery.  *See Johnson* v. *County of Nassau*, 411 F. Supp. 2d 171, 183 (E.D.N.Y. 2006) ("[A]lthough the NYSDHR investigation may not have afforded Plaintiff the full panoply of procedures that are available to litigants in a civil action, the New York Court of Appeals has made clear that this fact alone is insufficient to make collateral estoppel inapplicable." (citing *Jeffreys* v. *Griffin*, 1 N.Y.3d 34, 42 (2003)).

Having opted to pursue his employment discrimination claim before the SDHR, and then having sought and obtained a determination on that claim from the New York Supreme Court, Plaintiff is procedurally barred from pursuing his claims against the Defendant in federal court.

**CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED. The Clerk of Court is directed to terminate all pending motions, adjourn all remaining dates, and close this case.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith; therefore, *in forma pauperis* status is denied for purposes of an appeal.  *See Coppedge* v. *United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated:      June 26, 2015
            New York, New York

_____
KATHERINE POLK FAILLA
United States District Judge

*A copy of this Order was mailed by Chambers to:*

```
Victor Peralta
615 West 172nd Street
#63
New York, NY 10032
```

14